Carl Odell **ECHARD**, Petitioner,

v.

**E. B. HASKINS**, Superintendent,
Respondent.

Civ. A. 69–141.

United States District Court,
S. D. Ohio, E. D.

May 10, 1971.

Allan Sherry, Woodsfield, Ohio, for petitioner.

Paul W. Brown, Atty. Gen. of Ohio, and William Dunlap, Asst. Atty. Gen. of Ohio, for respondent.

## OPINION AND ORDER

KINNEARY, District Judge.

Petitioner, a state prisoner, brings this action for a writ of habeas corpus under the provisions of Title 28, United States Code, Section 2241(c) (3).

This matter is before the Court on the petition and return of writ. An evidentiary hearing was held to develop the factual basis for petitioner's allegations.

Petitioner has exhausted his state remedies as required by Title 28, United States Code, Section 2254.

Petitioner is serving a ten to twenty-five year sentence on his conviction by jury verdict for the crime of armed robbery.

Petitioner makes the following allegations:

1. That the Court limited cross-examination by the defendant of a witness for the state.

2. That the defendant was subjected to a so-called "line-up" without being advised of his rights; that he was the only person in said line-up and that he was without counsel at said time and place and was not advised of his rights to said counsel.

3. That Thelma Ewers, a claimed eyewitness, was under duress and compulsion to testify in this case by reason of the fact that she, immediately after the alleged crime, without seeing this defendant, and/or without knowing the defendant, signed an affidavit claiming this petitioner committed the crime complained of, when she had obtained this information from law enforcement officials who were not present when this alleged crime had been committed.

4. That this petitioner was denied due process when the evidence on behalf of the state clearly disclosed that the defendant (petitioner) was in custody of the police of West Virginia when this alleged crime occurred.

5. That the prosecuting witness (Sheriff Sulsberger) testified, not in response to a question, that this petitioner had committed another crime, that a motion for a mistrial was overruled by the trial court.

**1.**

▮ The limited cross-examination of which petitioner complains is recorded at page 65 of the bill of exceptions filed in this case. The sequence of questions is as follows:

Q. I'll repeat the question, Mrs. Ewers. Prior to the 11th of May 1966, did you not make a sworn affidavit that Carl Odell Echard was the man that was in there, even before you ever saw him?

MR. BURKHART: Now, I object, Your Honor, on the grounds that she was not at the time making an identification when she signed the affidavit.

THE COURT: That's a conclusion. I'll sustain the objection. Calling for a conclusion.

Q. I'll rephrase it. Prior to May 11th, 1966, did you sign an affidavit concerning Carl Odell Echard and the robbery at the Country Kitchen, and at that time you had not seen him to identify him?

A. Yes, I had not saw him.

Q. So on February 16th, 1966, an affidavit that you signed to have Carl Odell Echard—this man—returned from West Virginia as one of the persons who robbed the Country Kitchen—you hadn't seen him to identify him by name, had you?

A. No, I hadn't.

It appears from the bill of exceptions that counsel for the petitioner did get the information he wanted after he rephrased his question. Consequently, this allegation does not indicate the violation of any constitutional right.

**2.**

▮ Petitioner's second allegation concerning the manner in which he was identified also fails to indicate the infringement of a constitutional right because Shirley Ritchie, the person making the in-custody identification, did not testify at petitioner's trial. The only eye witness testimony against the petitioner was that of Thelma Ewers. The basis for Mrs. Ewers identification will

be discussed under petitioner's third allegation.

### 3.

In his third allegation, petitioner speculates that the witness Thelma Ewers was psychologically coerced into identifying petitioner as the man who perpetrated the robbery. Petitioner speculates that her in-court identification was coerced by the need to testify in accordance with an earlier sworn affidavit. The affidavit was necessary to effectuate petitioner's extradition from West Virginia. In this affidavit, Thelma Ewers allegedly swore that petitioner was the one wanted for the robbery. Petitioner argues that the only way she could have known that he was the robber was through Shirley Ritchie. Thelma Ewers did not see the petitioner until two months after she signed the affidavit.

The Court holds that this sequence of events did not coerce Thelma Ewers' testimony.

■ There is another argument implied in petitioner's second and third allegations. Petitioner argues that Thelma Ewers' in-court identification was tainted by the prejudice inherent in the confrontation between petitioner and Shirley Ritchie which took place in West Virginia. Petitioner testified that he was seated in a room at the police station in St. Mary's, West Virginia when Shirley Ritchie, accompanied by Sheriff Sulsberger, came in to identify him. This confrontation took place in February, 1966, well before the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Those decisions are not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1968).

■ Any claim that this confrontation was so suggestive and conducive to irreparable mistaken identification as to be a denial of due process, must be evaluated in light of the totality of surrounding circumstances. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The facts of the robbery as disclosed in the bill of exceptions indicate that both Shirley Ritchie and Thelma Ewers had an independent basis for their identification of petitioner.

■ The robbery took place in a restaurant which was open for business, around five o'clock in the morning. Thelma Ewers recognized the robbers as two young men who had been in earlier, around 2:30 that same morning. Thelma Ewers had waited on them when they came in at 2:30. When they came back later they again ordered food and she testified that she recognized them. She estimated that the robbers were on the premises for about twenty minutes. They did not wear masks.

Based on these facts, the Court finds that there was an independent basis for Thelma Ewers' in-court identification. The in-court identification did not rest alone on a communication from Shirley Ritchie. See, Johnson v. Salisbury, (No. 20258, 6th Cir., March 18, 1971); Jackson v. United States, 134 U.S.App. D.C. 18, 412 F.2d 149 (1969); United States ex rel Rutherford v. Deegan, 406 F.2d 217 (2d Cir. 1969); Fitts v. United States, 406 F.2d 518 (5th Cir. 1969); United States ex rel James v. Follette, 301 F.Supp. 569 (S.D.N.Y.1969). Consequently, petitioner's third allegation does not entitle him to relief.

### 4.

■ Petitioner's fourth allegation relates to a question of fact which was properly before the trial jury. This Court recognizes from the bill of exceptions that there was testimony which put petitioner twenty miles from the scene of the robbery at about the same

time that the robbery was taking place. The jury, however, obviously concluded that the testimony concerning the time of the offense was not as definite as petitioner contends. A federal court sitting in a habeas corpus case will not substitute its judgment for that of the jury. See generally, Fernandez v. Klinger, 346 F.2d 210 (9th Cir. 1965) cert. den. 382 U.S. 895, 86 S.Ct. 191, 15 L. Ed.2d 152.

### 5.

Finally, petitioner argues that he was denied due process when a prosecution witness introduced the fact that petitioner had allegedly committed another crime. The testimony to which petitioner objects is as follows:

Question by Mr. Sherry:

* * * now, did you notify any arresting authorities, Sheriff, of the description of the car?

Answer by the Sheriff:

At approximately three o'clock that same morning a car pulled out of Newport that had got gas and didn't pay for it, and this was identified as the same car with these individuals. That's the reason the police and the Sheriff's Department were alerted. (B.E. 19.)

The trial judge ordered the objectionable testimony stricken and instructed the jury to disregard it.

In view of the instruction given by the trial judge, this Court holds that the improper remark was not so conspicuously prejudicial as to deprive petitioner of a fair trial. See, Reese v. Cardwell, 410 F.2d 1125 (6th Cir. 1969).

Whereupon, the Court determines that the petition is without merit and it is therefore denied.

This action is hereby dismissed.