Opinion filed February 18,
2010

 

 

 

 

 

 

                                                                        In The

                                                                              

  Eleventh
Court of Appeals

                                                                 ____________

 

                                                           No. 11-08-00054-CR 

                                                     __________

 

                                          NAOMI
ALVA, Appellant

 

                                                             V.

 

                                       STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 70th District Court 

 

                                                           Ector
County, Texas

 

                                                 Trial
Court Cause No. A-33,361

 



 

                                           M
E M O R A N D U M   O P I N I O N

 

In two issues of asserted error, appellant
Naomi Alva seeks reversal of her conviction for murder and the ensuing
punishment of life confinement in the Institutional Division of the Texas
Department of Criminal Justice.  In her first issue, she contends it was error
for the State=s
attorney or the trial court to inject injurious and prejudicial matters before
the jury panel during the voir dire examination.  In her second issue, she
asserts the trial court reversibly erred in overruling her motion for directed
acquittal because the evidence was legally and factually insufficient to
warrant a charge to the jury on the offense of murder.  Disagreeing that
reversal is required, we affirm the judgment of the trial court.








The basis of appellant=s first issue is a comment
by the State made during the State=s
jury voir dire examination.   In the portion of that examination giving rise to
this challenge, the State commented:  AIt
is not evidence, and it can=t
be used as a consideration whenever the Defendant doesn=t testify.  You can=t consider that. . . .  However, if a
Defendant does give up that right, and testifies, is anybody going to go, oh,
well, they gave up that special right, they must be more believable than
anybody else?@

Having received no reply to that question,
the State continued:  AYou
think, well, they gave up that right, so, wow, they=re going to come in here and just
automatically think that they=re
telling the truth because of that?  Would you think that?@  It was at that point that
appellant=s counsel
objected on the basis that, by its statement, the State reversibly erred in
making a strong implication that appellant should testify.

In the seminal case of Sells v. State,
121 S.W.3d 748 (Tex. Crim. App. 2003), the high court instructs that, during
the voir dire examination, it would leave to the trial court=s discretion the propriety
of a voir dire question and it would not disturb that trial court=s resolution of a
particular question absent an abuse of discretion.  Id. at 755.  It went
on to define a proper voir dire question as one that Aseeks to discover a juror=s views on some issue applicable
to the case.@  Id.

In contending that the question and dialogue
were improper, appellant posits that the State made a strong implication that
appellant should testify and by doing so ventured into reversible error.  In
maintaining that position, appellant primarily relies upon the court=s decision in Godfrey v.
State, 859 S.W.2d 583 (Tex. App.CHouston
[14th Dist.] 1993, no pet.).  In that case, the court considered  statements
made by the prosecutor during the State=s
jury voir dire examination such as, if that defendant Agets up here and testifies, he will say
anything to save his own hide, he will get up there and lie@ and, Aif he doesn=t testify, he must be
hiding something.@  Id.
at 584.  The Godfrey court held that those statements required reversal
because they were Aa
misstatement of the law, particularly, a misstatement as to why a defendant may
or may not choose to testify.@ 
Id. at 585.  The Godfrey court also commented, and put emphasis,
on the fact that the prosecutor, after an objection was overruled, Apersevered with the same
line of argument.@  Id.
at 585.  En route to its reversal, the court noted that the statements made by
the prosecutor were Aextremely
improper@ and that the
AState should not be
allowed to continue making such improper statements with impunity.@  Id. at 586.








Although admitting that the statement in
question here Awas not
as grievous,@
appellant contends that the trial court here reversibly erred because the
question led to Aa
misstatement of the law through an implication that a Defendant who testifies
receives the benefit of a doubt from the jury.@

In considering appellant=s argument, we note the
general statement of the law that appellate courts give wide latitude to trial
court decisions made during the jury selection process and that the decision of
a trial court as to the propriety of a particular question will not be disturbed
absent an abuse of discretion.  Barajas v. State, 93 S.W.3d 36, 38 (Tex.
Crim. App. 2002).  Responding to appellant=s
argument that reversal is required, the State argues that the question was
proper because it sought to discover whether the prospective jurors had any
preexisting biases that, if appellant chose to take the stand,  would make her
more believable.  In comments made prior to asking the question, the record
reveals that the prosecutor had commented on the defendant=s right not to testify and
that the jurors could not consider the failure to take the stand in their
deliberation.

The Court of Criminal Appeals has instructed
that a commitment question is one that commits a prospective juror to resolve
or refrain from resolving an issue a certain way after learning a particular
fact.   Standefer v. State, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). 
If the State=s
question had been answered affirmatively, it would have given rise to a valid
challenge for cause.  Under this record, we cannot conclude that the trial
court abused its discretion.

Additionally, even if we assume, arguendo,
that the question was improper, we again find the comments of the Godfrey
court instructive.  En route to its reversal of the trial court=s ruling, the court
commented that statements of counsel would Anot
constitute reversible error unless, in light of the record as a whole, the
statements are extreme or manifestly improper, violative of a mandatory
statute, or inject new facts harmful to the accused into the proceedings.@  Godfrey, 859 S.W.2d
at 585.

Here, in asking the question, the prosecutor
did not violate any mandatory statute, nor did he inject new facts harmful to
the accused.  Moreover, he did not, as the prosecutor in the Godfrey case
had done, emphasize or repeat the alleged error.  Indeed, after appellant=s trial objection, the
prosecutor abandoned that line of questioning.  In sum, under this record, we
cannot find that the trial court abused its discretion in failing to grant a
mistrial.   Because it does not reveal reversible error, appellant=s first issue is overruled.









Reiterated, in her second issue, appellant
contends that the trial court reversibly erred in overruling her motion for directed
acquittal because the evidence was both legally and factually insufficient to
warrant a charge to the jury on the offense of murder.  That argument requires
us to briefly recount relevant evidence.  

The testimony revealed that on June 18,
2006, there was a party and that, during that party, appellant and one Sarah
Kiskaden got into an argument.  Appellant then left the party in a van
accompanied by three others, namely Jesse McGinnis, Jonathan Paredes, and Ervin
Terry.  Paredes averred that, while the quartet was in the van, McGinnis called
an individual identified as Johnnie Oranday.  In the course of that
conversation, McGinnis asked Oranday to get two guns for him:  a A9 and a bitch.@  It was later identified
that that was a reference to a 9 mm pistol and a shotgun.  Further, in the
course of the conversation, McGinnis said he needed the guns because he was
going to Ahit Mark and
Adrian.@  Paredes also
averred that, during the course of that conversation, appellant was in the van
next to McGinnis and was Aegging
it on.@  He also said
that appellant told another friend of hers who was still at the party, A[D]on=t worry.  We are going to
take care of them.@

Sarah Kiskaden said that she was still at
the party when appellant returned to the party in the driver=s seat of the van with
McGinnis in the passenger seat.  As she approached the van, she saw McGinnis
get out of the van and shoot Athe
gun@ in the air.  She
then ran off and later learned that Adrian Garza, her boyfriend, had been shot.

Sergio Pol testified that he was at the
party that night.  He saw a van approaching with its Asliding door@
open.  He saw McGinnis get out of the van, fire once into the air and once
toward another man, and Aunload[]
the rest of the clip@
on Garza.  He then heard appellant tell McGinnis to Ahurry up and get in.@  McGinnis was then pulled into the van, and
with appellant driving, it pulled away.  Pol averred that the engine of the van
was kept running during the entire time of the shooting incident.

Ervin Terry testified that he was in the van
when it left the party, that it was driven by appellant with McGinnis in the
front seat, and that he heard McGinnis call someone for Aa bitch and a 9@
because he was going to shoot someone in the stomach.

When, as here, the propriety of a denial of
a motion for directed verdict is challenged, the reviewing court will consider
it the same as an attack upon the sufficiency of the evidence to sustain a
conviction.  McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.
1997).








In determining the legal sufficiency of
evidence to sustain a conviction, the reviewing court views all the evidence in
a light most favorable to the prosecution to determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Garrett v. State, 851 S.W.2d 853, 857 (Tex.
Crim. App. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)).  In conducting a factual sufficiency review, the reviewing court views
all the evidence in a neutral light and determines whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006).  In conducting the factual sufficiency
review, we are cautioned that we must be appropriately deferential to the jury=s findings.  Id. at
407; Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000).

The evidence is legally sufficient.  By the
testimony of two witnesses, appellant was seated next to McGinnis when he made
the telephone call asking for two guns and said that he was going to use the
guns to make a Ahit.@  Paredes averred that
appellant was Aegging
it on.@  There was
testimony that appellant had driven the van to the place where the shooting
took place and had the door open with the engine running while McGinnis shot
Garza.  That evidence is sufficient to support a jury belief that she had
knowledge of the existence of the guns and the intent to use them. The fact
that she drove the van to the scene of the incident with that knowledge and
waited with the engine running during the shooting is sufficient to justify a
jury belief that she had knowledge of the existence of the guns, the intent
with which they were to be used, and, by her conduct, she encouraged and aided
the commission of the crime.

That evidence is also factually sufficient
to justify the verdict of the jury.  Again, the evidence was sufficient to
justify a jury belief that there was a plan to bring guns to the scene of the
shooting, that appellant knew of that plan, and that it was intended to use the
guns to make a Ahit.@  It was also sufficient to
justify a jury belief that, by appellant=s
conduct, she encouraged and participated in the shooting and death of Garza.

Suffice it to say that, after reviewing the
evidence, we find it both legally and factually sufficient to justify the
conviction.  Accordingly, appellant=s
second issue must be, and is hereby, overruled.








There being no reversible error, the
judgment of the trial court is affirmed.

 

PER CURIAM

 

February 18, 2010

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel
consists of: Wright, C.J.,

McCall,
J., and Boyd, S.J.[1]









[1]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo, sitting by assignment.